**UNITED STATES of America,**
**Plaintiff,**

v.

**Karim MOHAMMAD, Defendant.**

**No. CR.98–342(WGB).**

United States District Court,
D. New Jersey.

April 14, 2000.

Robert Cleary, United States Attorney, District of New Jersey by Jane Myers, Asst. U.S. Atty., Newark, NJ, for Plaintiff.

David Holman, Federal Public Defender's Office, Newark, NJ, for Defendant.

## MEMORANDUM OPINION

BASSLER, District Judge.

Defendant Karim Mohammad is seeking return of property that was allegedly not returned to him after he was arrested in November 1997.[1] The Government con-

1. Mohammad styled his application as a writ of replevin, which was filed February 16, 1999. He also filed a "writ of ad inquirendum" on May 12, 1999, which seeks informa-

tends that any property that it had, has been returned to Mohammad or his attorney, David Holman, Esq., from the Office of the Public Defender. The Court treats Mohammad's request, which was filed pro se, as a motion for return of property pursuant to Federal Rule of Criminal Procedure 41(e). For the following reasons Mohammad's motion for the return of the Rado watch is **granted,** and the motion for the return of the cash, beeper, social security documents, driver's license and passports is **denied.**

## I. BACKGROUND

In June 1991, Mohammad purportedly entered the United States as a political refugee, after having been shot in the face during the Afghanistan/Russian War. In November 1997, Mohammad was arrested by the Drug Enforcement Agency (DEA). After his arrest, he was held in custody at the Union County Jail. In June 1998, he pled guilty to the drug charges, and in November 1998, this Court sentenced Mohammad to 70–months imprisonment.

Mohammad now seeks return of property from the Government. Despite the Government's assertion to the contrary, see AUSA Letter of Sept. 20, 1999, Mohammad clearly enumerated the items he seeks. Mohammad Petition for Replevin, Feb. 6, 1999. "This includes, but is not limited to [his] Passport, driver's license, Social Security documents, a Rado Watch, an electronic paging device ('beeper'), and $1,669.00 in U.S. Currency." Mohammad Petition for Replevin.

The Assistant U.S. Attorney (AUSA) has written three letters that attempt to explain the whereabouts of some of the missing items. The AUSA's correspondence dated September 20, 1999, indicates that the files of the DEA "did not contain any documents reflecting the seizure of property or money from Mohammad."

The AUSA's letter also stated that an agent from the DEA suggested that the AUSA should contact the U.S. Marshal's Service or the Union County Jail regarding the property.

The AUSA's correspondence dated October 5, 1999, notes that the U.S. Attorney's Office was informed by the U.S. Marshal's Service that on December 11, 1998, "certain items" were mailed to Mohammad's attorney, Holman, of the Public Defender's Office. In that letter, the AUSA conveyed what was learned from the U.S. Marshal's Service, which claimed that the items were not inventoried because they were not of monetary value. That correspondence also explains that the Union County Jail wrote a letter stating that Mohammad's jacket, pants, shirt, and shoes were the only pieces of property that were received by the Jail when Mohammad was booked on November 10, 1997. At that time, Mohammad signed the property envelope verifying that he had turned over those items, but had not turned over funds or other property. The Jail provided copies of that paperwork.

In a letter dated November 8, 1999, the AUSA stated that the $1669 had been seized and "forfeited by the DEA" as fruits of contraband (even though the AUSA's letter of September 20, 1999 indicated that a DEA agent stated that he "could not recall" their seizing anything of monetary value).

In a letter dated January 3, 2000, the Court informed the parties that

in accordance with a recent Third Circuit decision, *United States v. Chambers*, 192 F.3d 374 (1999), it is necessary for the Court to hold an evidentiary hearing. Pursuant to *Chambers*, the parties must present evidence to enable the Court to review the following issues: (1) whether the government possesses the

tion about the status of the petition for writ of replevin. Both motions were filed pursuant to 28 U.S.C. § 1651, which proves in part that "[t]he Supreme Court and all courts estab-

lished by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

property at issue; (2) what happened to the property if it is no longer in the possession of the government; and (3) any disputed issue of fact necessary for the Court to resolve the motion.

Even though "such an action is treated as a civil proceeding for equitable relief" the Court has jurisdiction over this motion. *United States v. Chambers,* 192 F.3d 374, 376 (3d Cir.1999) (additional citations omitted); *see also* 28 U.S.C. § 1331.

On March 22, 2000, the Court held an evidentiary hearing. With the assistance of an interpreter who spoke Push Tu, Mohammad testified to the facts in what he called his Petition for a Writ of Replevin. Mohammad added that he was also missing an additional $120 in cash. The Court will not address that amount because it was never raised in his prior submissions to the Court. Holman was also sworn in as a witness and testified that he did receive "certain items." Holman explained that he received a Federal Express package but could not determine who had sent it. Holman testified that the contents consisted of only legal papers and family photos. He found it odd, however, that the package was sent to him because that had never occurred in the past. Mohammad confirmed that those were the items he received.

At the hearing, the AUSA was unable to provide any new information explaining the location of the items Mohammad was seeking. Although the AUSA had contacted the DEA and the U.S. Marshal's Service several times, those agencies could not find any inventory lists. The AUSA conceded that the agencies were normally required to itemize what is seized during an arrest but that they had failed to do so with Mohammad. The AUSA presented no witnesses or affidavits verifying any of the information communicated by the DEA or the U.S. Marshal's Service.

During the hearing, Mohammad testified that when he stated in his petition that "[r]eceipts for his property were forwarded by Respondent to his appointed coun-

sel," Petition for Writ of Replevin at 2, he was actually referring to his legal papers and correspondence. Holman could not recall there being any receipts in the package that he received and forwarded to Mohammad. Mohammad corroborated Holman's testimony that there were no receipts. The pictures and documents appear to be the "certain items" that the U.S. Marshal's Service sent to Holman.

## II. DISCUSSION

Pursuant to Federal Rule of Criminal Procedure 41(e), a person who is aggrieved "by deprivation of property may move the district court for the district in which the property was seized for the property on the ground that such person is entitled to lawful possession of the property." Fed. R.Crim.P. 41(e); *see also Government of Virgin Islands v. Edwards,* 903 F.2d 267, 273 (3d Cir.1990).

### A. Is there any property that is considered to be contraband?

■ First, the Court must determine whether any of the items are subject to forfeiture or are contraband. Although the government may seize evidence for use in investigation at trial, the government must return the property when the proceedings have concluded unless it constitutes contraband or is subject to forfeiture. (*Chambers,* 192 F.3d at 376) (citing *United States v. Premises Known as 608 Taylor Ave., Apt. 302,* 584 F.2d 1297, 1302 (3d Cir.1978); *United States v. Wilson,* 540 F.2d 1100, 1103 (D.C.Cir.1976)).

Here, Mohammad is seeking the return of the following items: his passports, driver's license, Social Security documents, a watch, a beeper, and $1,669. A notice of forfeiture indicates that the $1,669 was "acquired [by the DEA] as a result of a drug-related offense" and is subject to forfeiture pursuant to 21 U.S.C. § 881. Notice of forfeiture, dated January 6, 1998. No other items were subject to forfeiture. On September 17, 1998, forfeiture was de-

clared by the DEA pursuant to 19 U.S.C. § 1609. No notice deficiency exists because both Mohammad and his attorney acknowledged that they had received the notice of forfeiture and had declined to contest it. Because the cash was seized in connection with the drug offense, Mohammad is not entitled to its return.

### B. Whether the Government's assertion that it has nothing to return renders the motion moot.

 Although the Government contends that any property it once possessed has been returned to Mohammad or his attorney, the Rule 41(e) motion is not moot. *Chambers,* 192 F.3d at 376–77 (explaining that Second, Fourth, Sixth, Seventh and Eighth Circuits have come to the same conclusion that when government claims that property has been returned, R. 41(e) motion is not defeated); *see also United States v. Frank,* 763 F.2d 551, 553 (3d Cir.1985) (stating in IRS proceeding that motion for return of property is not defeated merely by government stating that it has destroyed the property or given the property to third parties).

In *Chambers,* 192 F.3d at 375, the trial court erroneously concluded that the petitioner's motion was moot because the Government no longer retained custody of the property at issue. The status of the property being sought was disposed of as follows: one car was forfeited, another was released to a repossession company, papers had been destroyed and the keys and wallets of the petitioner had been returned to his girlfriend. *Id.* at 375–76. The Third Circuit vacated and remanded the decision of the trial court, concluding that "the government can not defeat a properly filed motion for return of property merely by stating that it has destroyed the property or given the property to third parties." *Ibid.*

### C. Who Bears the Evidentiary Burden.

 When a criminal proceeding has terminated, as is the case here, the eviden-

tiary burden for a Rule 41(e) motion shifts to the government. *Chambers,* 192 F.3d at 375 (citing *United States v. Martinson* 809 F.2d 1364 (9th Cir.1987)). At that point, a presumption exists that the person from whom the property was allegedly taken has a right to its return. *Id.* at 377 (citing *Martinson,* 809 F.2d at 1369). To rebut that presumption, the government must prove that it has a legitimate reason to keep the property, by, for example, demonstrating that it had a claim of ownership or right to possession that is adverse to that of the movant. "The government, *must do more than state, without documentary support, that it no longer possesses the property at issue.*" *Id.* at 377–78 (emphasis added) (citing *Mora,* 955 F.2d at 159).

 Here, to summarize, the only items for which the Court has any evidence or information are as follows. First, Mohammad signed the property envelope acknowledging that he gave the Union County Jail only his clothes and shoes, but no money. Second, despite its initial assertions to the contrary, the DEA possessed the $1669 in cash, which has been forfeited. Third, the U.S. Marshal's Services sent "certain items," which consisted of papers and photos, to Holman, Mohammad's attorney. Although there were no affidavits from the U.S. Marshal's Service, the testimony of Mohammad and Holman did not contradict the assertions of the U.S. Marshal's Service. The following items remain unaccounted for: the watch, beeper, license, Social Security documents and passports.

The Court finds two facts to be troubling. First, the AUSA initially advised the Court that a telephone conversation with the DEA agent revealed that the agent did not recall seizing any of the items. The DEA, however, later produced the notice and declaration of forfeiture, indicating that the $1669 had been forfeited. That inconsistency demonstrates the DEA's lack of certainty regarding what, if anything, was seized from Mohammad.

Further, the fact that Mohammad specified that $1669 was seized, and that is the precise amount that was forfeited, certainly lends credibility to Mohammad's allegations.

Second, the DEA failed to inventory the items seized, which, as conceded by the AUSA, is required. The Department of Justice regulations governing seized personal property and inventory records state:

> Each bureau shall be responsible for establishing and maintaining inventory records of its seized personal property to ensure that:
>
> (a) The date the property was seized is recorded;
>
> (b) All of the property associated with a case is recorded together under the case name and number;
>
> (c) The location of storage of the property is recorded;
>
> (d) A well documented chain of custody is kept; and
>
> (e) All information in the inventory records is accurate and current.

41 C.F.R. § 128–50.101 (West 2000). The DEA falls within the Department of Justice, making the above regulations applicable to that agency. *See* 28 C.F.R. § 0.1. Although the Government has submitted numerous letters, it has not offered any "receipt, log entries or other documentation—not even an affidavit . . . to support the assertion that it no longer has the . . . property." *Mora*, 955 F.2d at 158–59. *Mora* involved a case in which it had been established that the Government had the property at one time. Here, that fact is impossible to establish because of the DEA's failure to maintain or produce an inventory list related to Mohammad's arrest. "[I]n light of the government's own regulation, it may not so easily brush aside [Mohammad's] request for the return of his property because it cannot be located." *Id.* at 158 (referring to DEA's failure to keep records of what was seized).

According to the Second Circuit, there is no authority to support the proposition that a district judge is required to rely on a representation made by the government or any litigant. *Mora*, 955 F.2d at 158. The Court must rely only on the evidence presented at the hearing. *Ibid.* Despite the fact that the Court alerted the Government that it would conduct an evidentiary hearing regarding the missing items, no one from the DEA appeared, nor did the Agency submit any affidavits. The Court only has the unrebutted testimony of Mohammad that the items at issue were seized, and the corroborating testimony by his attorney, Holman, that the package with the "certain items" did not contain any of the missing items. The Court finds that Mohammad's and Holman's testimony was credible.

### D. Damages

■ Because this is a case in equity, the court "has the power to award damages incident to the complaint." *Mora*, 955 F.2d at 159 (quoting *Martinson*, 809 F.2d at 1367–68) (allowing petitioner to request money damages on remand); *see also United States v. Farese*, 1987 WL 28830 at *3 (S.D.N.Y. Dec. 15, 1987) (ordering that if items cannot be returned, government will be required to provide petitioner the amount equal to the fair market value of the missing items). Regarding the license and Social Security card, Mohammad can reapply to the appropriate agencies for replacement identification. The Government has agreed to ascertain whether the INS has Mohammad's passports from the United States or Afghanistan. At the hearing, neither party provided any information regarding the beeper except that it was missing. Because there was no testimony regarding its value, there is insufficient evidence to grant restitution.

■ As for the Rado watch, Mohammad testified that he purchased it for $1400. In New Jersey, the owner of personal property may give an estimate of the value of his own property for purposes of

determining restitution. *State v. Rhoda*, 206 N.J.Super. 584, 503 A.2d 364 (1986), *cert. denied*, 105 N.J. 524, 523 A.2d 167 (1986). The Government did not contest its value. The value of Rado watches range in price from approximately $1100 to 1800.

The Government is therefore ordered to pay Mohammad restitution in the amount of $1400. Had the DEA kept an inventory list regarding what was originally seized, as required by regulation, the outcome might have been different. "[W]hatever disadvantage or inconvenience may befall the government by returning the property is due to the ineffectiveness, in this case, of its record-keeping procedures, and cannot justify barring petitioner's recovery." *United States v. Farese*, 1987 WL 28830, at \*3.

## III. CONCLUSION

For the following reasons, Mohammad's motion for a return of property is **granted** regarding the Rado watch and **denied** regarding the $1669 in cash, beeper, license, Social Security documents and passports.

An appropriate order follows.

### ORDER

This matter having come before the Court on Defendant's motion for return of property pursuant to Fed.R.Crim.P. 41(e); and

The Court having considered the submissions of the parties; and

The Court having conducted an evidentiary hearing on March 22, 2000; and

For the reasons set forth in the Court's Opinion issued this day; and

For good cause shown;

It is on this 14 day of April, 2000 ORDERED that Defendant's motion for return of property is **granted** regarding the Rado watch, which is valued at $1400; and

IT IS FURTHER ORDERED that Defendant's motion for return of property is **denied** regarding the $1669 in cash, beep-

er, license, social security card, and passports; and

IT IS FURTHER ORDERED that the Government shall pay restitution to Mohammad in the amount of $1400 within thirty days; and

IT IS FURTHER ORDERED that the Assistant United States Attorney shall ascertain whether the Immigration and Naturalization Service has either of Mohammad's passports.